# In the United States Court of Federal Claims

No. 24-2127

(Filed: August 13, 2025)

(NOT FOR PUBLICATION)

* * * * * * * * * * * * * * * * * * * * * * * *

MONA S. MURILLO,

    *Plaintiff*,

v.

THE UNITED STATES,

    *Defendant*.

* * * * * * * * * * * * * * * * * * * * * * * *

## ORDER

Plaintiff sued in this court on December 23, 2024, bringing claims for tax refunds and an alleged breach of contract. *See* ECF No. 1. Various motions followed. Then, defendant moved to dismiss some—but not all—of plaintiff's claims under Rule 12(b)(1) and 12(b)(6). *See* ECF No. 25. For the reasons set out below, we grant defendant's motion.[1]

To understand plaintiff's current case, we start by summarizing plaintiff's earlier tax-refund suit in this court. In 2023, plaintiff sued in this court and sought tax refunds for the 2018, 2020, and 2022 tax years. Complaint, *Murillo v. United States*, No. 23-1047 (Fed. Cl. July 7, 2023), ECF No. 1. After several months, plaintiff agreed to settle the case. The settlement agreement, which constituted a "full settlement of all issues in [the] matter," provided that plaintiff would receive $1,837 for tax year 2018 and $1,800 for tax year 2020, although neither payment would be for

---

[1] Also pending are plaintiff's motion to proceed *in forma pauperis* (ECF No. 11) and plaintiff's motion to take judicial notice (ECF No. 28) of exhibits attached to defendant's motion to dismiss. Those motions are addressed below.

the American Opportunity Tax Credit[2] ("education credit"). Def.'s Partial Mot. to Dismiss Ex. 1 (settlement agreement). Once plaintiff accepted the settlement agreement, defendant would file a stipulation of dismissal to dismiss the refunds claims for the 2018 and 2020 tax years with prejudice. *Id.* (The 2022 claim was dismissed without prejudice and is not pertinent to this litigation.) Additionally, the Internal Revenue Service ("IRS") would adjust plaintiff's 2018 and 2020 account transcripts to reflect a $0 account balance. *Id.*

Over the following months, the parties implemented the settlement agreement. In February 2024, plaintiff signed and submitted the settlement agreement to defendant. *Id.* Defendant accepted the settlement agreement and notified plaintiff of its acceptance via mail. *Id.* Ex. 2 (letter).[3] In July 2024, defendant mailed plaintiff the settlement checks, notices of adjustment showing how IRS calculated plaintiff's refund interest, and IRS account transcripts showing that IRS had made the promised adjustments. *Id.* Ex. 4 (letter). Then, defendant, with plaintiff's permission, filed a stipulation of dismissal. Stipulation of Dismissal, *Murillo*, No. 23-1047 (Fed. Cl. Aug. 20, 2024), ECF No. 35. As of June 2025, plaintiff's account transcripts for 2018 and 2020 show an account balance of $0. *Id.* Exs. 5–6[4] (IRS account transcripts).

---

[2] The American Opportunity Tax Credit is a credit for qualified education expenses of eligible students for the first four years of their higher education. I.R.C. § 25A(b)(2)(C). The Credit reduces the amount of tax reported by the taxpayer on a dollar-for-dollar basis up to $2,500, § 25A(b)(1), but only $1,000 of the Credit is refundable to the taxpayer if the Credit's amount exceeds the tax due, § 25A(i).

[3] We treat exhibits 2 and 4, which are attached to defendant's partial motion to dismiss, as incorporated by reference to plaintiff's complaint.

[4] Exhibits 5–8 of defendant's partial motion to dismiss are not present in plaintiff's original or amended complaints, but since they are official public records (whose authenticity is undisputed) that are integral to plaintiff's claim, we can consider those exhibits without running afoul of Rule 12(d). *See, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33–34 (1st Cir. 2001); *Philips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Now, plaintiff advances three claims: a breach-of-contract claim pertaining to the 2018 and 2020 tax years, a tax-refund claim for the 2023 tax year, and a tax-refund claim for the 2024 tax year. First, plaintiff alleges that defendant owes her $1,400 (plus interest) for the 2018 and 2020 tax years because defendant breached the settlement agreement which resulted from the earlier tax-refund case. *See* ECF No. 1 at 1–2. According to plaintiff, defendant breached the settlement agreement in March 2024 by applying a $1,400 education credit to her 2018 account instead of her 2020 account, *id.* at 1, meaning that IRS still owes her a $1,400 education credit for 2020, ECF No. 23 at 2. To substantiate that claim, plaintiff points to a March 4, 2024, IRS letter showing a $1,400 overpayment for the 2020 tax year. ECF No. 1 at 12. She further claims that IRS account transcripts showing a $0 balance on her tax accounts for 2018 and 2020 either (1) support her position[5] or (2) were falsified by IRS. *See* ECF No. 26 at 4–5 (claiming transcripts show that she is owed a $1,400 refund). *But see* ECF No. 28 at 1–2 (claiming that the transcripts were falsified). Second, plaintiff claims that defendant owes her a $2,601.27 refund for the 2023 tax year. ECF No. 1 at 1–2. In her amended complaint, plaintiff adds a third claim: a $2,890 (plus interest) tax refund for the 2024 tax year.[6] ECF No. 23 at 3.

---

[5] Plaintiff also points to a line in her 2020 account transcript that shows a $1,389.14 refund issued on June 23, 2025, as proof that IRS owes her education credits for 2020. *See* ECF No. 26 at 5 (citing Def.'s Partial Mot. to Dismiss Ex. 6). Plaintiff acknowledges that the prison returned the check to IRS as part of the Blue Bag Program, *id.*, which is a program designed to combat tax fraud in the incarcerated population, Internal Revenue Service, *IRS Blue Bag Program Fact Sheet*, IRS.gov (last accessed Aug. 11, 2025), https://www.irs.gov/pub/irs-utl/Blue_Bag_Program.pdf. For its part, defendant maintains that—given the settlement agreement and statutory cap on education credits—IRS erred in issuing plaintiff a $1,389.14 refund. Whatever IRS's reason for issuing the refund (and the prison's for returning it), the refund sheds no light on whether plaintiff has plausibly alleged that she is owed $1,400 in education credits for 2020. Accordingly, the mystery June 2025 refund plays no part in our analysis.

[6] Plaintiff did not attach a copy of her 2024 tax return to either of her complaints in violation of Rule 9(m)(2)(A), but she later attached a copy of her returns to her declaration in opposition to defendant's partial motion to dismiss. ECF No. 27 at 4–8. We take no position on whether the submitted documents would constitute a valid return if properly filed with IRS.

3

Defendant moves to dismiss plaintiff's claims relating to the 2018, 2020, and 2024 tax years. ECF No. 25 at 2. (The 2023 tax year is not addressed by defendant's motion.) Defendant argues that we lack jurisdiction over those claims for two reasons.

As to 2018 and 2020 breach-of-contract claim, defendant argues that plaintiff's complaint fails to state a claim under Rule 12(b)(6). Defendant notes that the March 4, 2024, IRS letter (which plaintiff says is evidence that her education credit was misappropriated) predates the stipulation of dismissal and IRS's update of her accounts. In effect, defendant reasons, the March 4 letter is not evidence of IRS breaching the settlement agreement but rather reflects where plaintiff's tax matters stood before the settlement agreement. In addition, defendant argues that plaintiff was never entitled to an education credit in 2020. For one, the credit's refund limit is $1,000, not $1,400, so plaintiff was never entitled to a $1,400 refund. What is more, the settlement agreement explicitly disposed of "all issues" pertaining to the 2020 tax year and specified that neither the 2018 nor the 2020 refunds would be for the education credit. *See* Def.'s Partial Mot. to Dismiss Ex. 1.

As to the 2024 tax refund, defendant argues that we lack jurisdiction given that plaintiff has not filed a valid tax return for the 2024 tax year. First, plaintiff did not comply with Rule 9(m), which requires that plaintiff attach a copy of her tax return to the complaint. Second, plaintiff alleges that she filed her tax return claim in IRS's Fresno, California office, but the Fresno office rejected the filing because returns cannot be filed there. That, according to defendant, means plaintiff never filed a valid tax return. And even if plaintiff had filed a valid tax return in February 2025, defendant contends that her 2024 tax-refund claim is still barred because IRS has not denied her claim and the six-month waiting period has not elapsed.

We start with defendant's Rule 12(b)(6) challenge to plaintiff's 2018 and 2020 breach-of-contract claim. To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). While we assume that all well-pleaded factual allegations as true, we give no such deference to any legal conclusions plaintiff may disguise as facts. *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012). Nor do our looser standards for *pro se* pleadings excuse a *pro se* litigant's failure to bring

4

a claim meriting a legal remedy. *Steffen v. United States*, 995 F.3d 1377, 1380 (Fed. Cir. 2021).

We find that plaintiff has failed to state a claim as to her 2018 and 2020 breach-of-contract claim. Our analysis begins (and ends) with the settlement agreement. It guaranteed that plaintiff would receive refunds for 2018 and 2020 but specified that neither "of [those] overpayments will be for the American Opportunity Tax Credit." Def.'s Partial Mot. to Dismiss. Ex. 6. While plaintiff interprets that language to mean that the settlement agreement did not address education credits for 2020, the agreement's next paragraph forecloses that argument: "[t]his [agreement] is made in full settlement of *all* issues in this matter . . . ." *Id.* (emphasis added). Thus, per the agreement's plain terms, all issues pertaining to the 2020 tax year—including education credits—were settled. What is more, that global settlement is what allowed IRS to "make any adjustments necessary to plaintiff's 2018 and 2020 account transcripts so that each [would] reflect a $0 account balance." *Id.* If the agreement did not include education credits, then IRS would not have been able to reset plaintiff's 2020 account to $0.

Lastly, nothing in the agreement promises plaintiff $1,400 in education credits. Indeed, given that the education credits plaintiff seeks are capped at $1,000 for a given tax year, it would have been beyond defendant's authority to promise $1,400 in education credits. *See* § 25A(i). All told, the settlement agreement's plain meaning confirms that no breach occurred.

We next turn to defendant's Rule 12(b)(1) challenge to plaintiff's 2024 tax-refund claim. Subject matter jurisdiction is the "threshold matter" before this court can consider a case's merits. *Golden v. United States*, 137 Fed. Cl. 155, 168 (2018). When a Rule 12(b)(1) motion challenges our jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Williams v. United States*, 165 Fed. Cl. 72, 74 (2023).

Two interlocking statutes guide our jurisdictional analysis. Section 7422(a) states that a plaintiff cannot file a tax-refund claim in this court unless she first filed the claim with IRS. I.R.C. § 7422(a); *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 7 (2008). Section 6532(a)(1) further provides that no tax-refund suit can begin "before the expiration of 6 months from the date of filing the claim" unless IRS denies the claim. I.R.C. § 6532(a)(1). Both rules are jurisdictional. *United States v. Dalm*, 494 U.S. 596, 609–10 (1990) (§ 7422(a)); *Fremuth v. United States*, 129 Fed. Cl. 684, 689 (2016) (§ 6532(a)(1)).

5

Plaintiff's 2024 refund claim is beyond our jurisdiction. First, "a copy of the [refund] claim" "must" accompany the "pleading." RCFC 9(m)(2)(A). Plaintiff did not file a copy of her tax return with either of her complaints. True, she later filed a copy of her tax return, which she filed nearly seven months after she filed her initial complaint, but that is not enough. Rule 9(m)(2)(A) requires that the pleading (complaint) "include" the copy. *Id.* Second, even overlooking plaintiff's failure to follow Rule 9, she did not properly file her refund claim. According to plaintiff, she filed her 2024 tax return in the IRS Fresno, California office. Yet she also acknowledges that the Fresno office rejected it. ECF No. 23 at 1. That is because IRS instructs California taxpayers to file their tax returns elsewhere. *See* Def.'s Partial Mot. to Dismiss Ex. 7. Thus, plaintiff—by her own admission—never filed a valid tax return. And her IRS account transcript for 2024 buttresses that conclusion. It states, as of June 18, 2025, "[n]o tax return filed." *Id.* Ex. 8. Third, even assuming she filed a valid tax return in February 2025, § 6532(a)(1) says that she cannot sue here until either six months have elapsed (which will not happen until August 15, 2025) or IRS denies her claim (which also has not happened). In effect, plaintiff's claim is jurisdictionally infirm—thrice over—and we cannot adjudicate it.

Accordingly, we order the following:

1. For good cause shown, plaintiff's motion to proceed *in forma pauperis* (ECF No. 11) is granted.

2. Defendant's partial motion to dismiss (ECF No. 25) is granted. Plaintiff's breach-of-contract claim for tax years 2018 and 2020 is dismissed with prejudice under Rule 12(b)(6), and plaintiff's tax-refund claim for 2024 is dismissed without prejudice under Rule 12(b)(1).

3. Plaintiff's motion to take judicial notice (ECF No. 28) is denied. Typically, "judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts." *United States v. Cox*, 149 F.3d 1192, at *5 (10th Cir. 1998) (Table) (cleaned up). At this stage, we are only concerned with the

plausibility of plaintiff's claims, not their actual truthfulness, so judicial notice of defendant's exhibits as evidence is unnecessary. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5103, Westlaw (database updated May 2025) (explaining how judicial notice serves as a substitute for the formal taking of evidence).

4. Defendant is directed to file, on behalf of both parties, a Joint Status Report proposing further proceedings on or before September 2, 2025.

s/Eric G. Bruggink  
ERIC G. BRUGGINK  
Senior Judge